**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMUNITY IN-POWER AND DEVELOPMENT ASSOCIATION INC., LEARNING DISABILITIES ASSOCIATION OF AMERICA, LOUISIANA ENVIRONMENTAL ACTION NETWORK, SIERRA CLUB, and TEXAS ENVIRONMENTAL JUSTICE ADVOCACY SERVICES, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and MICHAEL REGAN, in his official capacity as Administrator of the United States Environmental Protection Agency, <br><br> *Defendants*. | Civil Action No. 1:23-cv-02715 (DLF) |

**PLAINTIFFS' STATEMENT OF POINTS AND AUHORITIES IN OPPOSITION TO AMERICAN CHEMISTRY COUNCIL'S MOTION FOR LEAVE TO INTERVENE**

The American Chemistry Council ("ACC") moves to intervene as a plaintiff in this action, which seeks to remedy the Environmental Protection Agency's ("EPA's") violations of the statutory deadlines for completing twenty-two distinct chemical risk evaluations under the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2605(b)(4)(G). *See generally* Compl. for Declaratory & Injunctive Relief, ECF No. 1 ("Compl."). The existing Plaintiffs—non-profit organizations dedicated to environmental justice and eliminating toxic chemical exposures that create serious health harms—filed this case because their members and staff and their children are exposed to each of the twenty-two toxic chemicals for which EPA has failed to timely

complete a risk evaluation. *See id.* ¶¶ 1, 6–7, 14, 76–98. Plaintiffs' members and staff suffer

ongoing harm from EPA's deadline violations because the overdue risk evaluations are a

mandatory prerequisite to EPA regulations that could reduce the toxic chemical exposures and

associated health risks that Plaintiffs' members and staff and their children are experiencing. *Id.*

¶¶ 8, 99. ACC, in contrast, is a chemical industry trade association that requested EPA initiate

two of the twenty-two overdue risk evaluations (the so-called "manufacturer-requested risk

evaluations," or "MRREs"), and that claims to represent members who manufacture and process

"some" of the other twenty chemicals for which EPA has violated the risk evaluation deadline

(the "high-priority chemicals"), Am. Chem. Council's Statement of P. & A. in Supp. of Mot. for

Leave to Intervene 4, ECF No. 14-1 ("ACC Br."); *see also* Compl. ¶¶ 27–32, 34–38 (describing

high-priority and manufacturer-requested risk evaluations).

Plaintiffs oppose ACC's motion to intervene. As to Plaintiffs' First through Twentieth

Claims, which address EPA's violations of the deadline for completing the twenty overdue high-

priority chemical risk evaluations, ACC fails to identify any basis for standing nor any interest

adequate to support its intervention. ACC argues only that the resolution of Plaintiffs' claims

concerning these twenty overdue risk evaluations would incidentally affect when EPA completes

the MRREs, a theory that does not satisfy the requirements of Article III standing nor

intervention under Federal Rule of Civil Procedure 24. Further, ACC's motion is improper as to

all the claims it seeks to litigate as a plaintiff-intervenor because ACC has not satisfied the

mandatory sixty-day notice requirement to pursue any claims against EPA for violating TSCA's

risk evaluation deadline. ACC also failed to submit a proposed complaint in intervention, as

required by the Federal Rules of Civil Procedure and this Court's local rules. Fed. R. Civ. P.

24(c); LCvR 7(j). Finally, ACC fails to establish a basis for permissive intervention.

Accordingly, Plaintiffs oppose ACC's motion.

**ARGUMENT**

I.    **ACC HAS NOT DEMONSTRATED ARTICLE III STANDING NOR A LEGALLY PROTECTABLE INTEREST IN THE TWENTY HIGH-PRIORITY CHEMICAL RISK EVALUATIONS AND THUS CANNOT INTERVENE AS OF RIGHT AS TO PLAINTIFFS' FIRST THROUGH TWENTIETH CLAIMS**

ACC may not intervene in this action as to Plaintiffs' First through Twentieth Claims, which challenge EPA's violations of the deadline to complete the twenty overdue high-priority chemical risk evaluations, because ACC has failed to demonstrate Article III standing. ACC seeks to intervene in this action so it may advocate for court-ordered deadlines for the overdue risk evaluations that are distinct from the deadlines Plaintiffs may seek. *See* ACC Br. 9 (asserting that ACC's and Plaintiffs' interests "almost certainly do not align with respect to the priority to be afforded each overdue risk evaluation"). Accordingly, as ACC appears to acknowledge, it "must . . . demonstrate standing under Article III of the Constitution" to intervene as of right. *Id.* at 6; *see Yocha Dehe v. U.S. Dep't of Interior*, 3 F.4th 427, 430 (D.C. Cir. 2021); *In re Endangered Species Act Section 4 Deadline Litig.* ("*In re ESA Deadline Litig.*"), 270 F.R.D. 1, 4 (D.D.C. 2010); *see also Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020) ("An intervenor of right must independently demonstrate Article III standing if it pursues relief that is broader than or different from the party invoking a court's jurisdiction."). For the same reasons that it fails to identify an injury supporting standing, ACC fails to demonstrate a legally protectable interest as required for intervention as of right. *Cf. In re ESA Deadline Litig.*, 270 F.R.D. at 5–6 (finding aspiring intervenor lacked legally protectable interest for the same reason it lacked standing).

"When, as here, [an] organizational plaintiff[] move[s] to intervene, they may establish Article III standing on their own behal[f] ('organizational standing') 'or on behalf of their members ("associational standing").'" *Ctr. for Biological Diversity v. Regan,* 539 F. Supp. 3d 136, 140 (D.D.C. 2021) (quoting *Env't Integrity Project v. McCarthy*, 139 F. Supp. 3d 25, 36 (D.D.C. 2015)). ACC does not say whether it is advancing an associational or organizational theory of standing, suggesting at times both theories but ultimately establishing neither. *See* ACC Br. 3 ("*ACC and its members* also will be necessarily impacted by the Court's decision . . . ." (emphasis added)).

ACC has not demonstrated associational standing to challenge EPA's violations of the deadline for completion of the twenty high-priority chemical risk evaluations. "An association only has standing to bring suit on behalf of its members when [1] its members would otherwise have standing to sue in their own right, [2] the interests it seeks to protect are germane to the organization's purpose, and [3] neither the claim asserted nor the relief requested requires the participation of individual members[.]" *Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1323 (D.C. Cir. 2013) (alterations in original) (quoting *Fund Democracy, LLC v. SEC*, 278 F.3d 21, 25 (D.C. Cir. 2002)). ACC has failed to demonstrate associational standing for Plaintiffs' First through Twentieth Claims because it has not established that any of its members can establish Article III standing in their own right. To make this showing, ACC would have to demonstrate for each of the twenty claims that at least one of its members meets the three elements of Article III standing, *i.e.*, that a member has suffered (1) an injury-in-fact, (2) that is fairly traceable to the challenged agency action or inaction, and (3) is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *see also Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (affirming that "a plaintiff must demonstrate standing for

4

each claim he seeks to press and for each form of relief that is sought" (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008))). Critical here, an injury-in-fact sufficient to support standing is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and quotation omitted).

ACC has failed to explain how its members are injured by EPA's violations of the deadline for completing the twenty high-priority chemical risk evaluations. ACC claims that because ACC "requested [the other] two . . . risk evaluations," and its "members manufacture (including import) and process *some* of the high-priority substances that have been identified by EPA for risk evaluation," it "has a unique interest in the order in which EPA completes the twenty-two overdue risk evaluations."[1] ACC Br. 2, 4 (emphasis added). This is inadequate to support associational standing for the twenty claims challenging EPA's violations of the deadline for completing the high-priority chemical risk evaluations.

First, a vague statement that ACC's members manufacture and process some unidentified subset of the chemicals at issue does not demonstrate the concrete or particularized injury needed to establish Article III standing. Successfully asserting associational standing to support a motion to intervene requires "specifically identify[ing] members who have suffered the requisite harm." *Nat. Res. Def. Council v. EPA*, 896 F.3d 459, 462 (D.C. Cir. 2018) (alteration in original) (quoting *Chamber of Com. of the U.S. v. EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011)). Accordingly, in *Natural Resources Defense Council v. EPA*, the D.C. Circuit denied a motion for intervention

_____

[1] ACC inconsistently characterizes the number of high-priority chemicals that its members manufacture or process as both "some" and "many," ACC Br. 2 n.3, 4, and it never identifies which of the twenty high-priority chemicals fall within this category.

where "[n]owhere in its motion or brief [did the movant] identify a single member of its organization" who would suffer the alleged injury. 896 F.3d at 462–63.

The same conclusion applies here. ACC fails to identify even one member who manufactures or processes any of the twenty high-priority chemicals, and it appears to concede that no such member exists for some undisclosed number of those chemicals. *See* ACC Br. 2 n.3, 4 (asserting that its members manufacture or process "some" or "many" of the twenty high-priority chemicals). As such, ACC has not established standing on the theory that EPA's violations of the high-priority risk evaluation deadline harm its members' business interests in the high-priority chemicals.[2]

ACC fares no better in asserting that its members, or ACC itself, have standing to pursue the twenty claims concerning the high-priority chemical risk evaluations because of their interest in prioritizing completion of the MRREs, the *other* two overdue risk evaluations. ACC argues that it "has an interest in the order in which [the high-priority chemical] risk evaluations are completed," "because of their impact on the deadline to complete the . . . MRREs." ACC Br. 3. But ACC's desire to influence how EPA prioritizes completing the high-priority chemical risk evaluations relative to the MRREs does nothing to establish that EPA's violations of the deadline for the high-priority chemical risk evaluations are injuring ACC or its members. Accordingly, ACC does not have standing to challenge those violations. *See Pub. Citizen, Inc. v. Nat'l*

---

[2] Even if ACC could identify a member who manufactures or processes each of the twenty high-priority risk evaluation chemicals, it is entirely unclear from ACC's brief what interest those members would have in enforcing the deadline for completing the relevant risk evaluations. As noted, risk evaluations are a precursor to regulation of a chemical's manufacturing, processing, use, and disposal under TSCA. *See* 15 U.S.C. § 2605(a)–(b). ACC fails to explain how its members are injured by EPA's unlawful failure to complete these risk evaluations, which, by necessary implication, is delaying potential federal restrictions on ACC members' business activities.

*Highway Traffic Safety Admin.*, 489 F.3d 1279, 1289 (D.C. Cir. 2007) ("To demonstrate standing under Article III, a party must show injury in fact that was caused by the conduct of the defendants . . . ."). EPA has many different administrative proceedings in progress at any given time which it must prioritize. ACC cannot establish standing by asserting that because it is injured by one or two agency actions, it is entitled to a seat at the table for any other agency action that might affect the relative prioritization of the separate agency actions in which it claims an interest.

ACC cites no authority supporting its theory that a potential incidental impact on the timing of EPA's completion of the MRREs supports its standing to sue over EPA's violations of the deadline for the distinct high-priority chemical risk evaluations. Instead, ACC attempts to distinguish the multiple cases in this Circuit that have denied intervention motions in deadline suits when the movant's standing argument hinged on their being subject to a regulation that might result from the overdue agency action because "standing requires more than the *possibility* of potentially adverse regulation." *Sierra Club v. McCarthy*, 308 F.R.D. 9, 12 (D.D.C. 2015) (quoting *Defs. of Wildlife*, 714 F.3d at 1324–25). By necessary implication, standing also requires more than the possibility of potentially adverse *sequencing* of evaluations that may support potentially adverse regulation.

ACC also fails to demonstrate organizational standing, as it has not identified an injury to its organization from EPA's violations of the high-priority chemical risk evaluation deadline. To establish that it has suffered a cognizable injury in its own right, ACC must establish that "the defendant's action or omission to act injured the organization's interest" and ACC "used its resources to counteract that harm." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 378 (D.C. Cir. 2017) (quotations omitted). ACC does not

7

address how EPA's failures to timely complete the twenty high-priority chemical risk

evaluations have "cause[d] a concrete and demonstrable injury to the [ACC's] activities," *id.*

(quotation omitted), or how ACC has used its resources to counteract harm its organization has

suffered. As a result, ACC has failed to establish organizational standing.

Since ACC has not demonstrated that it has associational or organizational standing, it

has not met the requirements of Article III standing and cannot intervene as of right to challenge

EPA's violations of the high-priority chemical risk evaluation deadline. Accordingly, the Court

should deny ACC's Motion to Intervene as to Plaintiffs' First through Twentieth Claims.

For the same reasons, ACC has not established a legally protectable interest under the

D.C. Circuit's test to determine if an entity can intervene as of right. To intervene as of right

under Rule 24(a)(2), a movant must demonstrate, among other factors, "a legally protectable

interest relating to the property or transaction which is the subject of the action." *Sierra Club*,

308 F.R.D. at 11 (quotation omitted). "[T]he would-be intervenor bears the burden of

demonstrating that the requisite interest exists." *United States v. Morton*, 730 F. Supp. 2d 11, 16

(D.D.C. 2010). As discussed above, ACC has not clearly identified any interest that ACC or its

members have in ensuring that the overdue high-priority chemical risk evaluations are completed

as expeditiously as possible; it only articulates such an interest with respect to the two distinct

risk evaluations requested by ACC. *See* ACC Br. 9 (asserting that ACC has "unique interests in

ensuring that EPA timely completes *the MRREs*" (emphasis added)). ACC's failure to identify a

sufficient interest in enforcing the deadline for the high-priority chemical risk evaluations

provides an additional basis to deny its motion as to Plaintiffs' First through Twentieth Claims.

*See In re ESA Deadline Litig.*, 270 F.R.D. at 13 (holding proposed intervenor failed to establish

legally protectable interest for the same reasons it lacked standing).

## II.     ACC'S MOTION SHOULD BE DENIED BECAUSE IT IS NOT SUPPORTED BY A PROPOSED COMPLAINT

ACC's motion also should be denied because it violates Federal Rule of Civil Procedure 24(c) and Local Civil Rule 7(j), both of which require the filing of a proposed pleading with a motion to intervene. *See* Fed. R. Civ. P. 24(c) ("A motion to intervene must . . . be accompanied by a pleading that sets out the claim or defense for which intervention is sought."); LCvR 7(j) ("A motion to intervene as a party pursuant to Fed. R. Civ. P. 24(c), Procedure, shall be accompanied by an original of the pleading setting forth the claim or defense for which intervention is sought."). "[T]he Court could deny the motion based on that failure to comply with the federal rules alone." *Friends of the Earth v. EPA*, No. 12-0363, 2012 WL 13054264, at *2 (D.D.C. Apr. 11, 2012); *see also United States v. Facebook*, *Inc.,* 456 F. Supp. 3d 105, 114 n.9 (D.D.C. 2020) (denying motion to intervene because, among other defects, the movant "failed to file a proposed complaint with his motion as required by the Federal Rules of Civil Procedure and this Court's local rules"); *Strzok v. Barr*, No. 19-2367, 2019 WL 11343406, at *1 (D.D.C. Oct. 7, 2019); *Ying Qing Lu v. Lezell*, No. 11-1815, 2012 WL 1929904, at *1 (D.D.C. May 29, 2012) ("Because the Motion [to Intervene] was not accompanied by a pleading setting out their claim, as required by Rule 24(c), the Motion will be denied.").

ACC blithely disregards this requirement of the federal and local rules, asserting in its motion that ACC chose to forego submission of a complaint "so as not to burden the Court with extraneous pleadings." Am. Chem. Council's Mot. for Leave to Intervene on Behalf of Pls. 2, ECF No. 14 ("ACC Mot."). It is unclear why ACC thinks that a proposed complaint in intervention would be "extraneous," *id.*, and neither the federal nor local rules exempt aspiring intervenors from this requirement where, as here, they do not seek to raise claims beyond those pled by the existing parties. Further, while the D.C. Circuit has "expressed a willingness to adopt

flexible interpretations" of this requirement in "special circumstances," *EEOC v. Nat'l Child.'s Ctr., Inc.*, 146 F.3d 1042, 1045–46 (D.C. Cir. 1998), ACC identifies no such circumstances that excuse its violation of the pleading requirement. Nor could it, as this flexibility generally is available only in situations "when intervention is sought for a limited purpose, such as to obtain confidential records." *Hughes v. Abell*, No. 09-220, 2014 WL 12787807, at *7 (D.D.C. Feb. 14, 2014); *see also In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d 2, 5 n.3 (D.D.C. 2013) (affirming that a proposed pleading is not required to support a motion to intervene "where . . . a party seeks to intervene not to litigate a legal claim or defense on the merits, but rather to gain access to court records" (quotation omitted)). In such cases, the D.C. Circuit has explained, flexibility is justified in service of the "longstanding tradition of public access to court records." *Nat'l Child.'s Ctr.*, 146 F.3d 1045–46 (quotation omitted). No such "special circumstances" are present here, *id.*, and ACC has not even attempted to argue otherwise.

ACC's failure to submit a proposed complaint in intervention is not merely a technical defect. Rather, ACC's failure to plead its claims obscures the fatal defects in those claims, including ACC's lack of standing for twenty of those claims and its violation of TSCA's mandatory sixty-day notice requirement for all twenty-two claims, 15 U.S.C. § 2619(b)(2). *See supra* Point I; *infra* Point III. The Court should reject ACC's attempt to make an end-run around the pleading requirement that is clearly established in the Federal Rules of Civil Procedure and this Court's local rules.

## III.   ACC HAS NOT SATISFIED TSCA'S MANDATORY SIXTY-DAY NOTICE REQUIREMENT

ACC's motion should also be denied because ACC has not satisfied TSCA's sixty-day notice requirement for any of the claims it seeks to advance as plaintiff-intervenor. Before a party may pursue a claim against EPA for violating a non-discretionary duty established by

TSCA—such as the deadline for completing risk evaluations, 15 U.S.C. § 2605(b)(4)(G)—that party *must* provide sixty days' "notice to the Administrator of the alleged failure of the Administrator to perform an act or duty which is the basis for such action," *id.* § 2619(b)(2). This notice requirement, which is a familiar feature of citizen suits under federal environmental laws, is a "mandatory, not optional, condition precedent for suit," and district courts "must dismiss" claims that do not satisfy it. *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 26, 33 (1989); *see also Basel Action Network v. Maritime Admin.*, 370 F. Supp. 57, 75 (D.D.C. 2005) (holding that TSCA citizen-suit claims "must be dismissed" where parties do not satisfy the sixty-day notice requirement, as this constitutes a "fail[ure] to comply with the terms by which the United States has waived its sovereign immunity").[3]

ACC ignores the unequivocal mandate for sixty days' pre-suit notice set forth in TSCA and controlling Supreme Court precedent. With respect to the twenty claims that EPA violated the deadline for completing the high-priority chemical risk evaluations, ACC has not even attempted to satisfy the sixty-day notice requirement. *See* ACC Br. 2, 3 n.4 (stating that ACC sent a sixty-day notice letter addressing only EPA's violations of the MRRE deadline). This is fatal to ACC's motion, as the notice requirement is both mandatory and claim-specific. *See* 40 C.F.R. § 702.62(b)(2) (requiring that notice letter "[d]escribe with reasonable specificity the action taken or not taken by the Administrator which is alleged to constitute a failure to perform the act or duty"); *see also, e.g., Common Sense Salmon Recovery v. Evans*, 329 F. Supp. 2d 96, 104 (D.D.C. 2004) (holding that claim under the Endangered Species Act, which includes a

---

[3] The U.S. Supreme Court in *Hallstrom* addressed a notice requirement in the Resource Conservation and Recovery Act that is substantively identical to TSCA's, *compare* 42 U.S.C. § 6972(b)(1), *with* 15 U.S.C. § 2619(b)(2), and "[t]he Supreme Court expressly noted that the same analysis would apply to the citizen suit provisions of TSCA," *Basel Action Network*, 370 F. Supp. 2d at 75 n.11 (citing *Hallstrom*, 493 U.S. at 23 n.1).

substantively identical sixty-day notice requirement, "must be dismissed for lack of subject matter jurisdiction" because the claim was not specifically mentioned in plaintiffs' sixty-day notice letter addressing other Endangered Species Act claims). The notice requirement is also party-specific, such that Plaintiffs' provision of proper notice to EPA does not cure ACC's failure to do so. *N.M. Citizens for Clean Air & Water v. Espanola Mercantile Co.*, 72 F.3d 830, 832–34 (10th Cir. 1996); *Wash. Trout v. McCain Foods, Inc.*, 45 F.3d 1351, 1354 (9th Cir. 1995); *see also* 40 C.F.R. § 702.62(b)(3) (requiring notice letter to identify the citizen giving notice).

With respect to its two claims challenging EPA's violation of the deadline to complete the MRREs, ACC admits that the sixty-day notice period will not expire until December 5, 2023. ACC Br. 3 n.4. Though ACC suggests that it could cure this defect later, *see* ACC Mot. 2, that approach is foreclosed by the Supreme Court's decision in *Hallstrom.* There, the Court rejected the aspiring intervenor's bid for a flexible or pragmatic construction of the notice requirement that would permit them to file their complaint prematurely but then seek a stay for the duration of the mandatory notice period, stating that such an approach "flatly contradicts the language of the statute." *Hallstrom*, 493 U.S. at 26. ACC seeks the same impermissible result here; the fact that ACC has also violated the requirement to file a complaint in support of its intervention motion should not permit them to get around this holding of the *Hallstrom* Court.

Because "no plaintiff may commence an action without giving the [EPA] sixty-days prior written notice of its intent to sue," *Friends of Animals v. Salazar*, 670 F. Supp. 2d 7, 13 (D.D.C.

2009), ACC's bid to challenge EPA's violations of the risk evaluation deadline as plaintiff-intervenor must be denied.[4]

## IV.     ACC HAS NOT ESTABLISHED A BASIS FOR PERMISSIVE INTERVENTION

Finally, ACC has not established a basis for permissive intervention under Federal Rule of Civil Procedure 24(b). Where, as here, no statute provides a conditional right to intervene, the Court considers whether the movant "(1) has 'an independent ground for subject-matter jurisdiction,' (2) has made a timely motion, and (3) has 'a claim or defense that has a question of law or fact in common with the main action.'" *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 519 F. Supp. 2d 89, 93 (D.D.C. 2007) (quoting *Env't Def. v. Leavitt*, 329 F. Supp. 2d 55, 66 (D.D.C. 2004)). ACC does not satisfy the first or third elements.

As discussed above, ACC does not have justiciable claims because it has not satisfied the mandatory sixty-day notice requirement. Further, for the twenty claims concerning the high-priority chemical risk evaluations, ACC lacks standing. Indeed, in arguing that the Court should exercise its discretion to permit ACC to intervene under Rule 24(b), ACC asserts only that "ACC's claims *regarding its MRREs*" share a common question of law or fact with the main action. ACC Br. 9 (emphasis added). Maybe so, but that does not support ACC's intervention respecting the twenty high-priority chemical risk evaluations. On that issue, ACC merely opines that all of EPA's failures to timely complete TSCA risk evaluations "should be resolved in one action." *Id.* at 10.

---

[4] Because ACC has not submitted any pre-suit notice to EPA regarding the twenty overdue high-priority chemical risk evaluations, ACC will not be able to cure the notice defect by December 5, 2023, as Defendants suggest, unless ACC abandons its claims concerning the high-priority chemical risk evaluations. *See* Defs.' Resp. to Am. Chem. Council's Mot. for Leave to Intervene, ECF No. 17.

This is inadequate to justify permissive intervention. While Rule 24(b) grants courts "wide latitude" to permit intervention where a movant has a claim raising questions of law or fact in common with the main action, *Nat'l Child.'s Ctr.*, 146 F.3d at 1046, "permissive intervention . . . plainly *does* require an interest sufficient to support a legal claim or defense which is 'founded upon [that] interest,'" *Diamond v. Charles*, 476 U.S. 54, 76–77 (1986) (O'Connor, J., concurring in part) (alteration in original) (quotation omitted). Here, permissive intervention respecting the high-priority risk evaluation deadline "would be inappropriate" because ACC has "fail[ed] to show . . . 'a claim or defense that shares with the main action a common question of law or fact.'" *In re Idaho Conservation League*, 811 F.3d 502, 515 (D.C. Cir. 2016) (quoting Fed. R. Civ. P. 24(b)). ACC has, at best, offered only a "conclusory argument that it satisfies all of the elements for permissive intervention," and—for all twenty-two claims—it has "fail[ed] to specify the grounds for the independent subject-matter jurisdiction it claims to enjoy." *Nat'l Ass'n of Home Builders*, 519 F. Supp. 2d at 93. Accordingly, its bid for permissive intervention should be rejected.

## CONCLUSION

For the foregoing reasons, the Court should deny ACC's motion to intervene.

Respectfully submitted this 9th day of November, 2023.

/s/ Lakendra S. Barajas
Lakendra S. Barajas
D.C. Bar ID NY0556
Earthjustice
48 Wall St, 19th Floor
New York, NY 10005
(212) 284-8025
lbarajas@earthjustice.org

14

Katherine K. O'Brien
D.C. Bar ID ME0003
Earthjustice
P.O. Box 2297
South Portland, ME 04116
(212) 284-8036
kobrien@earthjustice.org

*Counsel for Plaintiffs*