# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMUNITY IN-POWER AND DEVELOPMENT ASSOCIATION INC., et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>  Defendants. | No. 1:23-cv-2715-DLF<br><br>Hon. Dabney L. Friedrich<br><br>(consolidated with 1:23-cv-03726)) |

## DECLARATION OF NANCY B. BECK

1.  I, Nancy B. Beck, declare under penalty of perjury that the following statements are true and correct to the best of my knowledge and belief and that they are based upon my personal knowledge, information contained in the records of the United States Environmental Protection Agency ("EPA"), or information supplied to me by EPA employees under my supervision. *See* 28 U.S.C. § 1746.

2.  I am the Principal Deputy Assistant Administrator for the Office of Chemical Safety and Pollution Prevention ("OCSPP") within EPA. I have held this position since February 2025. I held this position previously from December 2018 to January 2021. Prior to rejoining EPA this year, I worked for a law firm as their Director of Regulatory Science. I hold a B.S. in Microbiology from Cornell

University and an M.S. and Ph.D. in Environmental Health from the University of Washington.

3. The Office of Pollution Prevention and Toxics ("OPPT") is one of the offices within OCSPP. OPPT is responsible for developing and implementing both scientific and policy approaches for conducting risk evaluation and risk management activities mandated by the Toxic Substances Control Act ("TSCA"), including the development of the risk evaluations that are the subject of this lawsuit.

4. This declaration is filed in support of EPA's motion to extend the upcoming December 31, 2025, deadline for one chemical, 1,2-dichloroethane, by 120 days and to notify the court of the effect of the recent lapse in appropriations. The purpose of this declaration is to explain EPA's efforts to meet the current deadlines and EPA's plans for work during the requested extension.

**Current Status of Relevant Chemicals**

5. On November 22, 2024, this Court entered a consent decree that, in relevant part, required EPA to (1) complete its final risk evaluations for seven chemicals covered by the consent decree (of which, one must be the risk evaluation for 1,3-butadiene) by December 31, 2025, and (2) complete final risk evaluations for the ten remaining chemicals covered by the consent decree by December 31, 2026. Consent Decree ¶¶ 1.d & 1.e, ECF No. 39 (Nov. 22, 2024).

6. In complying with this and other terms in the consent decree (*see id.* ¶¶ 1.a -1.c) and its statutory obligations, EPA has published a final risk evaluation for 1,1-dichloroethane, formaldehyde, and tris(2-chloroethyl) phosphate ("TCEP"). *See, e.g.*, 1,1-dichloroethane Final RE, Formaldehyde Final RE; TCEP Final RE. EPA has also published draft risk evaluations for 1,3-butadiene and five of the phthalates subject to the consent decree: butyl benzyl phthalate, dibutyl phthalate, dicyclohexyl phthalate, di-ethylhexyl phthalate, di-isobutyl phthalate. *See,* 1,3-Butadiene Draft RE; Butyl Benzyl Phthalate Draft RE; Dibutyl Phthalate Draft RE; Dicyclohexyl Phthalate Draft RE; Di-ethylhexyl Phthalate Draft RE; Di-isobutyl Phthalate Draft RE; *see also* Reaves Decl. ¶¶ 23-26, ECF No. 44-1.

7. EPA is currently working on finalizing these six risk evaluations, consistent with the Agency's obligation to complete final risk evaluations for seven chemicals by December 31, 2025. EPA is currently on track to finalize those six risk evaluations by this deadline.

8. The seventh risk evaluation that EPA has been working on to comply with its 2025 consent decree obligations is 1,2-dichloroethane. The notice announcing the availability of the 1,2-dichloroethane draft risk evaluation for a 60-day public comment period was published in the Federal Register on November 19, 2025.

9.      EPA has also been working on the remaining ten risk evaluations with consent decree obligations by December 31, 2026 but has not yet completed the draft risk evaluations for these chemicals.

**Reasons for Extending the Deadline**

10.     The Existing Chemicals Risk Assessment Division ("ECRAD"), a division within OPPT, is primarily responsible for the TSCA risk evaluation process. There are several components of a TSCA risk evaluation, and the development of the risk evaluations requires a breadth of expertise and methods, processes, protocol, and models. First, the Agency must conduct human health hazard and exposure assessments, as well as assess the risks to the environment through evaluating environmental hazards, environmental releases, and environmental exposures. *See* 15 U.S.C § 2605(b)(4)(F); 40 C.F.R. § 702.39. EPA must then "integrate and assess available information on hazards and exposures" in the risk characterization. 15 U.S.C. § 2605(b)(4)(F). A risk characterization conveys the risk assessor's judgment as to the nature and presence or absence of risks, along with information about how the risk was assessed, where assumptions and uncertainties still exist, and where policy choices will need to be made. Lastly, EPA must determine whether a chemical substance does or does not present an unreasonable risk after considering the risks posed under the conditions of use. *Id*. § 2605(b)(4); 40 C.F.R. § 702.39(f). ECRAD collaborates with another division in

OPPT, the Existing Chemicals Risk Management Division, to develop the risk determination.

11.     Because TSCA risk evaluations are highly complex technical documents involving significant numbers of both internal and external procedural steps prior to publication of both draft and final products – often by the same or overlapping groups of technical experts in ECRAD – any delay or interruption in the process for one risk evaluation can have a cascading effect of delay or interruption not just for that chemical, but for other chemicals in the risk evaluation pipeline as well.

12.     OPPT's existing chemicals risk assessment resources are fully deployed to meet the schedules of all the chemicals currently under evaluation under the consent decree.

13.     EPA has assigned the same branch within ECRAD to work on all of the chlorinated solvents covered by the consent decree (i.e., 1,1-dichloroethane, 1,2-dichloroethane, *trans*-1,2-dichloroethylene, 1,2-dichloropropane, and 1,1,2-trichloroethane). ECRAD can generally complete its work more efficiently by having the same group of assessors working on similar chemicals that may share physical/chemical and fate properties, use patterns, and similar toxicology.

14.     The human health hazard assessments (i.e., one component of a risk evaluation that assesses the human health effects of the chemical) for both 1,1-

dichloroethane and 1,2-dichloroethane, as well as the entire draft risk evaluation for 1,1-dichloroethane were released for public comment in July 2024 and were peer reviewed by the Scientific Advisory Committee on Chemicals (SACC) in September 2024.

15. Because acceptable human health hazard data were not available to assess risks for 1,1-dichloroethane, to evaluate the human health hazard of 1,1-dichloroethane, EPA was required to employ a "read-across" approach using data available for a closely related chemical or analog. An analysis of other chlorinated solvents as potential analogs for read-across data was performed, which resulted in the identification of 1,2-dichloroethane (a close isomer of 1,1-dichloroethane) as the most appropriate analog to fill the identified data gaps for 1,1-dichloroethane.

16. On March 7, 2025, the court granted a 60-extension for EPA to complete the final 1,1-dichloroethane risk evaluation by June 17, 2025. Minute Order (Mar. 7, 2025). EPA met that deadline; however, because much of the ECRAD team working on 1,1-dichloroethane across all disciplines is also assigned to 1,2-dichloroethane, the need to extend the time to complete the risk evaluation for 1,1-dichloroethane delayed some of the work on the draft 1,2-dichloroethane risk evaluation.

17. Some of these delays in the 1,2-dichloroethane risk evaluation included completion of the release and occupational assessments for the chemical,

due in part to staff overlap (e.g., the lead engineer for 1,2-dichloroethane was also the lead for the 1,1-dichloroethane risk evaluation, which required a significant portion of their time until it was completed in June). Delays to these early evaluations of data and information trickle down to delays in the rest of the risk evaluation, which relies on having the release information to conduct the remaining assessments that make up the risk evaluation.

18. In the 2019 final scope document for 1,2-dichloroethane, EPA explained that during the manufacture of 1,2-dichloroethane, the byproducts 1,1-dichloroethane, 1,1,2-trichloroethane, *trans*-1,2-dichloroethylene, trichloroethylene, perchloroethylene, methylene chloride, and carbon tetrachloride are formed, and that EPA expected to assess those byproducts during the risk evaluation of 1,2-dichloroethane. The byproducts assessment provides a more complete picture of the risks associated with 1,2-dichloroethane. EPA included in the 1,2-dichloroethane draft risk evaluation an assessment of five of these byproducts, but the draft risk evaluation does not include the manufacture of [1,1,2-trichloroethane](#) and [*trans*-1,2-dichloroethylene](#) as byproducts because they are consent decree chemicals with deadlines in 2026, and those exposures will be assessed in their respective TSCA risk evaluations.

19. This is the first time ECRAD has ever done an assessment of byproducts in support of a TSCA risk evaluation. While the assessment

7

methodology ultimately applied in the draft risk evaluation was not novel, EPA had to consider significantly more sources of information since the assessment covered several chemicals and had to determine how to do parts of the assessment, including how to apply existing assessment tools and methodologies, which byproducts to assess as part of the 1,2-dichloroethane risk evaluation, and how to draft a risk determination that incorporated consideration of potential unreasonable risk from the byproducts to the potential unreasonable risk from the manufacture of 1,2-DCA. Because the process was new to everyone, it took additional time to draft the assessment and for comprehensive review by multiple layers of leadership in both OPPT and OCSPP.

20.     Because delays in finalizing the risk evaluation for 1,1-dichloroethane affected the drafting of the risk evaluation for 1,2-dichloroethane, and because EPA incorporated an assessment of 1,2-dichloroethane byproducts to assure that the draft risk evaluation considered the health and environmental risks from the manufacture of 1,2-dichloroethane, EPA did not complete the draft risk evaluation for 1,2-dichloroethane until November 14, 2025.

21.     The notice of availability for the draft risk evaluation for 1,2-dichloroethane published in the Federal Register on November 19, 2025. Public comment concludes on January 20, 2026 because the "Procedures for Chemical Risk Evaluation Under the Toxic Substances Control Act (TSCA)", 40 C.F.R.§

702.43(c), requires that the public have 60 days to provide comment. It will no longer be possible to allow for 60 days of public comment before December 31, 2025.

22. In addition to the 60-day comment period, EPA must conduct an initial screening of the public comments, assign them for review to the appropriate divisions within OPPT, including ECRAD and the Existing Chemicals Risk Management Division (ECRMD). Staff from the relevant OPPT divisions will then review the public comments, including any supporting documentation, and consider whether any changes are needed to the draft Risk Evaluation. During this time, EPA Staff will also draft responses to the public comments and meet with OCSPP and OPPT management to discuss the information received and additional recommendations.

23. EPA expects substantive comments on the 1,2-dichloroethane risk evaluation, including the submission of scientific journal articles or other supporting documentation for EPA's consideration. EPA will need to evaluate any relevant information and supporting data, which might require lengthy analyses, reviews of cited studies, and internal discussions with ECRAD, ECRMD, and EPA leadership.

24. All drafted responses to public comments and any changes to the risk evaluation will undergo multiple levels of management review, and concurrent

interagency review, before EPA submits the final risk evaluation to the Office of the Federal Register.

25. The comment period on the draft risk evaluation will not conclude before December 31, 2025. Consequently, EPA will also not have time to review, consider, and respond to public comments, and to finalize the risk evaluation before December 31, 2025.

26. It is not feasible to substitute a final risk evaluation for a different chemical in order to meet the December 31, 2025, deadline. As explained above, though work is underway, ECRAD has not completed draft risk evaluations for the ten remaining chemicals for which the consent decree requires final risk evaluations by the end of 2026 and each draft risk evaluation must be open for public comment for 60 days.

27. EPA has proceeded diligently to complete the risk evaluation for 1,2-dichloroethane. Despite the Agency's best efforts, it is unable to meet the Court-ordered deadline that requires EPA to finalize the risk evaluation for a seventh subject chemical by December 31, 2025. The risk evaluation that is closest to being completed is that for 1,2-dichloroethane and, as discussed in paragraph 26 above, EPA cannot sequence the risk evaluations for the remaining subject chemicals in any other way. Based on EPA's experience with previous risk evaluations and input from the assessment team, I anticipate that it will take approximately 120

days for EPA to submit the final risk evaluation for 1,2-dichloroethane to the Office of the Federal Register.

**Deadline**

28. On October 1, 2025, the new FY26 appropriations act that had been funding the federal government, including EPA, expired and those appropriations lapsed. The deadlines in the consent decree were automatically extended for every day until the Agency's appropriations resume. *See* Consent Decree, ¶ 12, ECF No. 39.

29. OPPT's operations continued to be supported by carryover funding until November 13, 2025. During that timeframe, EPA continued working on most of the risk evaluations.

30. On November 13, 2025, EPA's appropriations resumed and the automatic extension ended. As a result, the consent decree deadlines were automatically extended by 43 days.

31. Despite the automatic extension, EPA commits to complete six of the 2025 risk evaluations by the deadline of December 31, 2025.

32. The automatic extension would apply to the remaining ten risk evaluations with a deadline of December 31, 2026, making the new deadline to complete the ten final risk evaluations February 12, 2027.

33. At this time, EPA believes that a 120-day extension will be sufficient to finalize the 1,2-dichloroethane risk evaluation. Accordingly, EPA is seeking a new deadline of April 30, 2026 for the last final risk evaluation in Paragraph 1.d of the Consent Decree (*i.e.*, 1,2-dichloroethane).

I declare under penalty of perjury that the foregoing is true and correct. Executed this 8th day of December, 2025.

NANCY BECK
Digitally signed by NANCY BECK
Date: 2025.12.08 12:57:47 -05'00'

Nancy B. Beck, PhD, DABT
Principal Deputy Assistant Administrator
Office of Chemical Safety and Pollution Prevention
U.S. Environmental Protection Agency